| | |
|---|---|
| SIERRA CLUB,<br>2101 Webster Street, Suite 1300<br>Oakland, CA 94612,<br><br>   Plaintiff,<br><br>v.<br><br>ANDREW WHEELER,<br>in his official capacity as Administrator,<br>United States Environmental Protection<br>Agency,<br>Ariel Rios Building<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460,<br><br>   Defendant. | Case No. 1:20-cv-1088<br><br>COMPLAINT FOR<br>DECLARATORY AND<br>INJUNCTIVE RELIEF<br><br>Clean Air Act, 42 U.S.C. § 7401 *et seq.* |

## INTRODUCTION

1. This is a Clean Air Act citizen suit against EPA Administrator Andrew Wheeler for his failure to protect human health and the environment from dangerous exposure to sulfur dioxide ("SO$_2$"). Specifically, the Administrator has violated 42 U.S.C. § 7410(k)(1)(B) by failing to issue and publish a determination that Texas has failed to submit a state implementation plan ("SIP") ensuring that all nonattainment areas within the state come into compliance with the health-based National Ambient Air Quality Standard ("NAAQS") for SO$_2$ as expeditiously as practicable.

2. Exposure to SO$_2$, for even short time periods, such as five minutes, can have significant human health impacts, including the aggravation of asthma attacks and cardiovascular and respiratory failure, leading to increased hospitalizations and premature

1

death. 75 Fed. Reg. 35,520, 35,525 (June 22, 2010). Children, the elderly, and adults with asthma are particularly at risk.

3. On December 13, 2016, EPA designated the communities surrounding three large coal-burning power plants in Texas as violating the clean air minimum standards for $SO_2$. *Air Quality Designations for the 2010 Sulfur Dioxide ("$SO_2$") Primary National Ambient Air Quality Standard—Supplement to Round 2 for Four Areas in Texas: Freestone and Anderson Counties, Milam County, Rusk and Panola Counties, and Titus County*, 81 Fed. Reg. 89,870 (Dec. 13, 2016) (designations effective January, 12, 2017).

4. Within 18 months of the effective date of that rule—here, by July 12, 2018—Texas was required to submit a Clean Air Act "nonattainment" plan ensuring that those areas come into compliance with the NAAQS as "expeditiously as practicable but no later than 5 years from the date of the nonattainment designation." 42 U.S.C. §§ 7514-7514a; *see also id.* § 7502(a)(2)(A); 81 Fed. Reg. at 89,871 (Clean Air Act "directs" states to submit plans within 18 months that "provide for attainment of the NAAQS as expeditiously as practicable."). Texas failed to submit any plan.

5. Under 42 U.S.C. § 7410(k)(1)(B), EPA is required, by specified statutory deadlines, to determine whether Texas submitted an administratively complete and lawful Clean Air Act plan and either approve or disapprove the plan. Where, as here, a state fails to submit the required plan, EPA must make a determination to that effect, no later than six months after the submittal was due—here, by January 12, 2019. *Id.* EPA failed to satisfy that mandatory statutory duty.

6. To protect the health and recreational interests of its members living, working, recreating, and breathing polluted air in the Texas communities EPA has determined fail to meet the maximum allowable concentrations of harmful $SO_2$, Sierra Club seeks an order

compelling the Administrator to issue a finding that the state failed to submit the requisite nonattainment plan ensuring all areas of the state come into compliance with the NAAQS.[1] Where EPA determines that a state has failed to submit a required Clean Air Act plan, the agency must, within two years, issue a federal plan to ensure attainment, unless the state corrects the deficiency and EPA approves that plan before EPA issues a federal plan. 42 U.S.C. §§ 7410(k)(1)(C); 7410(c)(1).

## JURISDICTION AND VENUE

7. This is a citizen suit under the Clean Air Act, 42 U.S.C. § 7604(a)(2). This Court has jurisdiction over this action pursuant to 42 U.S.C. § 7604 (citizen suits), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1361 (mandamus action). The relief requested by Sierra Club is authorized pursuant to 42 U.S.C. § 7604 and 28 U.S.C. §§ 2201 (declaratory judgment), 2202, and 1361 (action to compel an officer of the United States).

8. In accordance with 42 U.S.C. § 7604(b)(2) and 40 C.F.R. Part 54, Sierra Club served notice on the Administrator of the Clean Air Act violation alleged in this Complaint, and its intent to initiate the present action. Notice was provided via electronic mail and Federal Express certified mail, posted August 20, 2019, and addressed to the Administrator. *See* Exhibit A hereto. More than 60 days have passed since Sierra Club served its notice of intent, and the Clean Air Act violations described in the notice are continuing.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because Defendant Andrew Wheeler is an officer of the United States being sued in his capacity as the

---

[1] In 2018, the Big Brown and Monticello power plants retired. Texas must still submit, and EPA must approve or issue its own, implementation plan to ensure those areas attain the NAAQS, and that any emission reductions are permanent and enforceable. 42 U.S.C. §§ 7505a; 7407(d)(3)(D). There is no such plan.

Administrator of the U.S. Environmental Protection Agency, and his official residence is in the District of Columbia.

## PARTIES

10. Plaintiff Sierra Club is a not-for-profit corporation organized and existing under the laws of California, with its principal place of business located in Oakland, California. Sierra Club has more than 784,000 members throughout the United States, including approximately 27,365 members in Texas, some of whom live, work, recreate, travel, engage in outdoor activities, and breathe in the Texas areas at issue here, which fail to meet federal clean air safeguards.

11. Sierra Club's mission is to explore, enjoy, and protect the wild places of the earth; to practice and promote the responsible use of the Earth's resources and ecosystems; to educate and enlist humanity to protect and restore the quality of the natural and human environment; and to use all lawful means to carry out those objectives.

12. Sierra Club and its members are concerned about diminished air quality and visibility caused by pollution from large coal-burning power plants. For many years, Sierra Club has conducted public education on, and advocacy for, effective and timely implementation of Clean Air Act requirements in Texas, including the filing multiple rounds of public comments on proposed state and EPA actions relevant to implementation of Clean Air Act's standards and permits in Texas, as well as the implementation of EPA's 2010 $SO_2$ NAAQS.

13. Sierra Club brings this action on behalf of itself and its members.

14. Defendant Andrew Wheeler is the Administrator of the United States Environmental Protection Agency and is charged with implementing and enforcing the Clean Air Act. The Administrator's Clean Air Act responsibilities include, *inter alia*,

4

determining whether a state has submitted an administratively complete state implementation plan, making and publishing a finding of failure to submit where the state has not submitted such a plan, and issuing federal nonattainment plan within two years of determining that a state has failed to submit the requisite plan. 42 U.S.C. §§ 7410(k)(1)(B)-(C); 7410(c)(1). Sierra Club is suing Mr. Wheeler in his official capacity as the Administrator of EPA.

## FACTUAL AND REGULATORY BACKGROUND

### A. The SO$_2$ NAAQS and Human Health

15. Bringing the entire country expeditiously into compliance with health-protective ambient air quality standards is the "heart" of the Clean Air Act. *Ala. Power Co. v. Costle*, 636 F.2d 323, 346 (D.C. Cir. 1979). The Clean Air Act directs EPA to issue National Ambient Air Quality Standards "establishing the maximum permissible concentrations of air pollutants." *Id.* The "primary" NAAQS are those whose attainment and maintenance are "requisite to protect the public health," with an "adequate margin of safety." 42 U.S.C. § 7409(b)(1).

16. Exposure to SO$_2$, for even short time periods, such as five minutes, can have significant human health impacts, including the aggravation of asthma attacks and cardiovascular and respiratory failure, leading to increased hospitalizations and premature death. Children, the elderly, and adults with asthma are particularly at risk.

17. To address these significant health threats, in 2010, EPA issued a new one-hour primary SO$_2$ national standard to protect the public against adverse respiratory effects associated with short-term SO$_2$ exposure. 75 Fed. Reg. 35,520, 35,525 (June 22, 2010). EPA estimated that implementation of the new standard will avoid between 2,300 and 5,900 premature deaths, 54,000 asthma attacks, and $36 billion dollars in public health costs and

5

lost productivity *every year. Id.* at 35,588; *see also* EPA, Final Regulatory Impact Analysis (RIA) for the $SO_2$ National Ambient Air Quality Standards (NAAQS), at tbl. 5.14 (June 2010), https://www3.epa.gov/ttn/ecas/docs/ria/naaqs-so2_ria_final_2010-06.pdf (last visited Apr. 27, 2020).

18. $SO_2$ pollution is not only harmful to human health by itself, but it also contributes to the atmospheric formation of fine particulate matter ("PM"), which can penetrate deep into the lungs and cause a host of health problems, including aggravated asthma, chronic bronchitis, and premature death. 78 Fed. Reg. 3086, 3103, 3105-06 (Jan. 15, 2013). PM caused by $SO_2$ pollution can also be transported long distances and can contribute to poor air quality in communities hundreds of miles away, including in Class I national parks and wilderness areas where EPA and the states are required to protect against, and remedy, visibility pollution. *See generally* 42 U.S.C. § 7491; 40 C.F.R. § 51.308; 81 Fed. Reg. 296 (Jan. 5, 2016).

### B. Implementation of the $SO_2$ NAAQS under the Clean Air Act

19. EPA's issuance of the 2010 $SO_2$ NAAQS triggered mandatory statutory timetables for implementation of the standard. Within two years—by 2012—EPA was required to "designate" as "nonattainment" any area of the country that "does not meet" the standard; "attainment" for those areas that meet the standard; and "unclassifiable" for areas where EPA lacks information to make a designation. 42 U.S.C. § 7407(d)(1)(A) and (B)(i).

20. In August 2013, EPA issued nonattainment designations for only 29 counties in 16 states. *See* 78 Fed. Reg. 47,191 (Aug. 5, 2013). Because EPA failed to timely issue final designations for most of the country, Sierra Club and another environmental organization filed a Clean Air Act citizen suit to compel the agency to fulfill its mandatory statutory duty

6

to finalize designations for all areas of the country under the new standard. *Sierra Club v. McCarthy*, No. 3:13-cv-3953-SI (N.D. Cal. filed Aug. 26, 2013).

21. As a result of a consent decree resolving that case, EPA was required to issue final designations for the areas meeting certain criteria—the areas with the largest sources of $SO_2$—by July 2, 2016. Consent Decree ¶ 1, *Sierra Club v. McCarthy*, No. 3:13-cv-3953-SI (N.D. Cal. filed Mar. 2, 2015), ECF No. 163. EPA must designate all remaining areas by December 31, 2020. *Id.* ¶¶ 2-3.

22. EPA's air quality designations govern the stringency of the Clean Air Act state implementation plans ("SIPs") that are required from each state to ensure achievement and maintenance of the NAAQS. For areas that are designated as being in "attainment" (*i.e.*, meeting the NAAQS), the state must develop a plan that ensures maintenance and adequate enforcement of the NAAQS. *See generally* 42 U.S.C. § 7410(a)(1)-(2). For areas that are designated "nonattainment" (*i.e.*, violating the standard), the state must, within 18 months of the effective date of the designation, submit a plan that meets specific pollution reduction requirements, and provides for attainment of the NAAQS as expeditiously as practicable, but not later than 5 years from the effective date of the nonattainment designation. 42 U.S.C. §§ 7502-7503, 7514-7514a.

   C. **EPA's nonattainment designations for Texas**

23. Nearly all $SO_2$ pollution in the United States comes from a handful of very large coal-fired power plants. Three coal-burning power plants in Texas—Big Brown in the Freestone and Anderson Counties Area, Martin Lake in the Rusk and Panola Counties Area, and Monticello in Titus County Area—have historically ranked among the largest annual $SO_2$ polluters in the country.

24. In March 2016, EPA proposed to designate the areas around the Martin Lake, Big Brown, and Monticello power plants, among several others across the country, as being in nonattainment with the $SO_2$ standard. 81 Fed. Reg. 10,563 (Mar. 1, 2016).

25. In response to EPA's proposed rulemaking, Sierra Club submitted multiple rounds of legal comments, expert analyses, air dispersion modeling using the most recent emissions and meteorological data available and consistent with EPA's technical guidance, regulations and past practice to show that $SO_2$ pollution from Martin Lake, Big Brown, and Monticello was causing violations of the NAAQS.

26. On December 13, 2016, under 42 U.S.C. § 7407(d), EPA designated the areas surrounding three coal-fired power plants—Big Brown in the Freestone and Anderson Counties Area, Martin Lake in the Rusk and Panola Counties Area, and Monticello in the Titus County Area—as being in nonattainment with the health-based 2010 $SO_2$ NAAQS. 81 Fed. Reg. at 89,875-76. The effective date of the final rule for those areas of Texas was January 12, 2017, *id.* at 89,870; and the designations remain effective.

**D. EPA failed to find that Texas failed to submit a nonattainment plan.**

27. Within 18 months—*i.e.*, by no later than July 12, 2018—Texas was required to submit for EPA review a SIP that achieved compliance with the NAAQS as expeditiously as practicable, but not later than 5 years from the effective date of the nonattainment designation. 42 U.S.C. § 7514; *see also* 81 Fed. Reg. at 89,871. Texas failed to submit any plan.[2]

---

[2] Big Brown and Monticello have ceased operating. Those deactivations, however, do not affect Martin Lake, which continues to operate and cause violations of the NAAQS. In any event, a single facility's voluntary decision to cease operations is not a substitute for the required Clean Air Act state implementation plan, which must include "permanent and enforceable" pollution reductions before EPA may redesignate the area as being in attainment. 42 U.S.C. § 7407(d)(3)(E). Texas has failed to implement any such enforceable

8

28. Under 42 U.S.C. § 7410(k)(1)(B), EPA is required to determine whether a SIP submittal is administratively complete. If, six months after a submittal is due, a state has failed to submit a SIP, there is no submittal that may be deemed administratively complete, and EPA must make and publish a determination stating that the state failed to submit the required plan. *Id.* This determination is referred to as a "finding of failure to submit." Once EPA issues a finding of failure to submit, the agency must, within two years, submit a federal implementation plan that ensures compliance with the NAAQS, unless the state corrects the deficiency and EPA approves the corrected plan before issuance of the federal plan. 42 U.S.C. § 7410(c)(1).

29. Because Texas failed to submit a nonattainment implementation plan, there is no SIP submittal to review, and EPA was required to make a determination that the state failed to submit the required SIP no later than six months after a submittal deadline—here, by January 12, 2019. *Id.* EPA failed to timely issue, and still has not issued, a determination that Texas failed to submit the required SIP. Consequently, EPA is in violation of its mandatory statutory duty to issue a finding of failure to submit under the Clean Air Act.

## PLAINTIFFS' INJURIES

30. Sierra Club members include individuals who live, work, travel, engage in recreational activities, and breathe in the communities surrounding the Martin Lake, Big Brown, and Monticello power plants. These are areas with air quality that EPA has determined "does not meet" the $SO_2$ air quality standard "requisite to protect public health," 42 U.S.C. §§ 7407(d)(1)(A)(i), 7409(b)(1); 81 Fed. Reg. 89,870, and for which EPA has failed to issue a finding that Texas did not submit the required Clean Air Act plan necessary to

---

plan, and has EPA failed to lawfully redesignate those areas in accordance with 42 U.S.C. § 7407(d)(3).

achieve compliance with the NAAQS as expeditiously as practicable. 42 U.S.C. §§ 7502, 7410(k)(1)(B), 7514-7514a.

31. Sierra Club members are very concerned about poor air quality in these nonattainment areas, and therefore avoid prolonged exposure to the areas around these power plants, including in the state park and reservoir adjacent to the Martin Lake power plant.

32. Sierra Club's members also use and enjoy the iconic and treasured national parks and wilderness areas, including Big Bend and Guadalupe Mountains National Parks, where air quality is, and has been, adversely affected by manmade haze-causing pollution from Texas sources, including the Martin Lake, Big Brown, and Monticello coal-burning power plants. *See generally* 81 Fed. Reg. 296 (Jan. 5, 2016) (concluding $SO_2$ pollution from these coal-burning power plants contributes to visibility impairment in national parks and wilderness areas). These members are harmed by haze pollution, which diminishes their views in the parks and reduces their enjoyment from hiking, camping, and otherwise recreating in these natural areas.

33. As a result of EPA's failure to timely fulfill the mandatory legal obligations described here, Texas still does not have a lawful and fully-approved nonattainment plan that requires enforceable reductions in harmful $SO_2$ pollution, and ensures attainment of the health-based NAAQS as expeditiously as practicable, 42 U.S.C. §§ 7502, 7514-7514a. Consequently, Sierra Club members in the Texas nonattainment areas at issue continue to be exposed to elevated levels of $SO_2$ pollution that are, by EPA's own definition, harmful to breathe, thereby forcing them to reduce their time outside, avoid areas around the power plants, and impairing their use and enjoyment of nearby recreation opportunities, their communities, and affected national parks and wilderness areas.

34. EPA's failure to timely fulfill its mandatory obligation to issue a determination that Texas has failed to submit a Clean Air Act plan harms Sierra Club members by prolonging poor air quality conditions that adversely affect or threaten their health; and by delaying measures and procedures mandated by the Act that would protect them from harmful sulfur dioxide pollution in places where they live, work, travel, recreate, and breathe. Indeed, $SO_2$ levels that exceed the 2010 NAAQS can exacerbate health problems such as asthma and chronic obstructive pulmonary disease, causing physical problems that force them to limit outdoor activities that they would otherwise be able to do and enjoy.

35. The acts and omissions of EPA alleged here also harm Sierra Club's members because their reasonable concerns about the health effects of their $SO_2$ exposure diminish their use of public lands and enjoyment of activities they previously enjoyed or would like to continue to engage in, and of areas they previously enjoyed or would like to continue to use.

36. The acts and omissions of EPA alleged here further harm Sierra Club's members' environmental, aesthetic, and welfare interest in using and enjoying the natural environment in areas adversely affected by $SO_2$ pollution from Martin Lake, Big Brown, and Monticello. In addition to harming human health, $SO_2$ contributes to the formation of acid rain, which damages plant life, aquatic life, and natural ecosystems, thus harming Sierra Club's members' recreational and aesthetic interests.

37. EPA's failure to timely fulfill its mandatory Clean Air Act obligations has similarly harmed Sierra Club's members by prolonging their exposure to manmade haze-causing $SO_2$ pollution from Martin Lake, Big Brown, and Monticello, which significantly

impairs their use and enjoyment of iconic and treasured national parks like Big Bend, Guadalupe Mountains, and other public lands.

38. EPA's failure to fulfill its legal obligation also harms Sierra Club's members in other areas that are downwind of the areas at issue in this Complaint by prolonging and exacerbating their exposure to PM caused by $SO_2$. Emissions from the power plants at issue here have been shown to contribute to premature death, asthma events, tens of thousands of lost work and school days, and hundreds of millions in public health impacts *each year* across the central region of the United States.[3]

39. The acts and omissions of EPA alleged here further deprive Sierra Club and its members of procedural rights and protections to which they would otherwise be entitled, including, but not limited to: the right to participate in state and federal rulemakings to determine whether major sources in the nonattainment areas at issue must decrease harmful $SO_2$ pollution to protect public health; the right to judicially challenge any final state plan that does not ensure attainment of the NAAQS as expeditiously as possible; the right to enforce requirements of the Act for preparation and implementation of plans to remedy and prevent violations of $SO_2$ safeguards; and the right to comment on and judicially challenge such plans. *See generally* 42 U.S.C. § 7607 (providing for notice, public comment, and the right to judicial review of implementation plans).

40. The EPA acts and omissions alleged here further injure Sierra Club and its members by depriving them of information to which they are entitled by law, including, but not limited to, EPA's published identification of each area's attainment status and its plan for achieving compliance with the NAAQS. If Sierra Club had access to such information,

---

[3] *See* Report of Dr. George Thurston, at 16-18, (Apr. 18, 2015), *available at* www.regulations.gov (Docket ID No. EPA-R06-OAR-2014-0071).

they would use it to, among other things: educate their members and the public about the scope of air quality violations in and around these areas of Texas; advocate for adoption of adequate measures to ensure attainment and maintenance of the NAAQS; and more efficiently target Sierra Club's actions to promote effective implementation of the 2010 $SO_2$ NAAQS. Such information would also assist Sierra Club's members in determining whether they are exposed to $SO_2$ levels that violate the health standard and in taking action to protect themselves, their families, their property, and their animals from $SO_2$ pollution. The acts and omissions complained of here deprive Sierra Club and its members of the benefits of such information and thus cause them injury.

41. EPA's failure also hampers Sierra Club's ability to perform certain programmatic functions essential to its mission, such as ensuring that states put in place the public health and environmental protections that accompany more stringent nonattainment classifications, and educating the public about these protections.

42. Sierra Club's and its members' protectable health, recreational, aesthetic, procedural, informational, and organizational interests have been and continue to be harmed by EPA's failure to fulfill its mandatory, nondiscretionary duty to enforce and implement the Clean Air Act, including its failure to find that Texas has not submitted the requisite implementation plan for attaining the $SO_2$ NAAQS in all areas of the state.

43. If the Administrator is required to timely issue a finding of failure to submit, as the law requires, it would redress Sierra Club's members' injuries because EPA would then be required, within two years, to issue its own plan to assure attainment, unless Texas corrects its delinquent plan and EPA approves it before issuing a federal plan. In either event, EPA would be required to expeditiously issue or approve a plan requiring reductions in harmful $SO_2$ pollution and ensuring expeditious attainment of the NAAQS, thereby

benefitting public health as well as Sierra Club's members' recreational, aesthetic, and environmental interests.

## CLAIM FOR RELIEF

### Failure to Issue a Finding that Texas Failed to Submit a Nonattainment SIP Under the 2010 SO$_2$ NAAQS

44. Sierra Club incorporates all previous paragraphs by reference.

45. Under the Clean Air Act, any person may commence a civil action against the EPA Administrator "where there is alleged a failure of the Administrator to perform any act or duty under [the Clean Air Act] which is not discretionary with the Administrator." 42 U.S.C. § 7604(a)(2).

46. On June 22, 2010, EPA issued a revised one-hour, primary SO$_2$ NAAQS to protect the public against adverse respiratory effects associated with short-term SO$_2$ exposure. 75 Fed. Reg. 35,520.

47. On December 13, 2016, under 42 U.S.C. § 7407(d), EPA designated the areas surrounding three Texas coal-burning power plants—Big Brown in the Freestone and Anderson Counties Area, Martin Lake in the Rusk and Panola Counties Area, and Monticello in the Titus County Area—as being in nonattainment with the health-based 2010 SO$_2$ NAAQS. 81 Fed. Reg. at 89,875-76. The effective date of the final rule for those areas of Texas was January 12, 2017; the designations remain effective. *Id.*

48. Within 18 months of the effective date of the nonattainment designations—*i.e.*, by no later than July 12, 2018—Texas was required to submit for EPA review a Clean Air Act plan that provides for attainment of the NAAQS as expeditiously as practicable, but no later than five years. 42 U.S.C. §§ 7514, 7514a; *see also* 81 Fed. Reg. at 89,871 (directing that states must submit nonattainment SIPs within 18 months of designation). Texas failed to meet that deadline.

14

49. Under 42 U.S.C. § 7410(k)(1)(B), EPA is required to review and determine whether a SIP submittal is administratively complete and whether it meets the minimum criteria of the Clean Air Act within six months of the submittal. Where, as here, the state fails to submit a required SIP, there is no submittal that may be deemed administratively complete, and EPA must make a determination no later than six months after a submittal was due that the state failed to submit the required SIP—here, by January 12, 2019. *Id.*

50. It is now more than six months after the deadline for Texas's nonattainment SIP submittal.

51. EPA has not issued a finding that Texas failed to submit a nonattainment SIP under the 2010 $SO_2$ NAAQS for the nonattainment areas listed above—*i.e.*, the Martin Lake nonattainment area in Rusk and Panola Counties, the Big Brown nonattainment area in Freestone and Anderson Counties, and the Monticello nonattainment area in Titus County.

52. Consequently, EPA is in violation of its mandatory statutory duty to issue a finding of failure to submit under the Clean Air Act, 42 U.S.C. § 7410(k)(1)(B), for those nonattainment areas.

53. EPA's failure to issue a finding of failure to submit constitutes a failure to perform acts or duties that are not discretionary with the Administrator within the meaning of 42 U.S.C. § 7604(a)(2). Such failure is ongoing.

54. Accordingly, Sierra Club is entitled to an order from this Court directing EPA to issue, by a date certain, a finding that Texas failed to submit its nonattainment SIP under the 2010 $SO_2$ NAAQS.

THEREFORE, Sierra Club respectfully requests that the Court:

(1) Declare that the Administrator is in violation of the Clean Air Act with respect to his failure to perform his mandatory, nondiscretionary duty to determine and publish a finding that Texas failed to submit a SIP for the

areas of the state designated as nonattainment under the SO$_2$ NAAQS, as described above;

(2) Issue a mandatory injunction requiring the Administrator perform his mandatory duty to issue a finding of a failure to submit by a date certain;

(3) Retain jurisdiction over this matter to ensure compliance with the Court's orders;

(4) Award Sierra Club its reasonable costs of litigation, including attorneys' fees, under 42 U.S.C. § 7604(d); and

(5) Grant such other relief as the Court deems just and proper.

DATED: this 27th day of April, 2020.    Respectfully submitted,

/s/ *Matthew E. Miller*
MATTHEW E. MILLER (DC Bar No. 1015222)
SIERRA CLUB
1536 Wynkoop Street, Suite 200
Denver, CO 80202
(303) 454-3344
matthew.miller@sierraclub.org

JOSHUA D. SMITH (Oregon Bar No. 071757)
(Pro Hac Vice Motion To Be Filed)
SIERRA CLUB
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5560
joshua.smith@sierraclub.org

*Attorneys for Plaintiff Sierra Club*